## FOSTER v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

No. 11845.  Decided June 15, 1931

BLOSSER, PJ, and MIDDLETON, J (4th Dist) and FARR, J, (7th Dist) sitting.

H. G. Holland, Cleveland, for Foster.
Ray T. Miller, and P. L. A. Lieghly, Cleveland, for State.

FARR, J.

William G. Lee was for many years president of the Brotherhood of Railroad Trainmen and organized the bank largely in their interest. He was also deeply interested in the affairs of the "Home Builders" being chairman of the board of both companies.

William Miller was chief clerk to the president of The Brotherhood. He was also secretary and treasurer of both companies, to which duties he gave but little attention and received no pay, his salary being paid by the Brotherhood.

Otto J. Rolbes was executive vice president of the bank and a member of the executive committee and was the manager of the bank. It was his duty to sign the official checks of the bank.

John A. DuBois was president of The Home Builders and a member of the executive committee of both companies, and in 1929 undertook to direct the affairs of both companies. It is said that he is now absent from the city and has been since December, 1929, without leaving any forwarding address.

John R. Foster, plaintiff in error, in the latter part of 1928 was employed to do some income tax work for the Home Builders, and a little later to make a semi-annual audit of the bank. He began January 1st, 1929, and was much about the bank.

William G. Lee became ill in 1928 and attended the last meeting of the Board of Directors on the 11th day of December, 1928, and died in November of 1929. The business of the bank was to receive deposits and make small loans up to approximately Five Hundred Dollars each. Out of business transacted a record was required to be kept, but there was no meeting of the board from July 9th to December 17th, 1929. That left Miller, Rolbes and DuBois practically in charge of the bank.

Foster began to borrow money from the bank in 1928 and at the time of the inception of the present difficulty was indebted to the Bank and Home Builders in the sum of $17,000. Dueser was the bookkeeper of The Home Builders and kept the ledger for the bank and knew but little concerning the transaction of the business.

During the time that these parties had charge of the business affairs of these companies, DuBois became indebted to the two companies in the sum of $34,000; Rolbes $7165 and Foster $17,000.

The rules of the bank required a written application, and if a loan was granted the obligation was required to carry the signa-tures of two co-makers. None of these requirements were complied with by these parties.

In the summer of 1929 there was a meeting of Rolbes, Foster, DuBois and Deuser, and DuBois seemed to feel that Foster was in need of money to effectuate some deal and said that the same should be loaned to him by the bank and with the result before stated. Later, it is claimed that the bank sold to The Home Builders securities in the sum of about $33,000, although no good reason is assigned for such transaction and at about this time Foster's family came in for a share of the favors to be granted by the bank. Dunley, a brother-in-law obtained on an unsecured note the sum of Four Thousand Dollars.

Next The Home Builders concluded to take over the indebtedness of Foster to the bank and for which it gave its own unsecured note it being already debtor to the bank in the sum of several thousand dollars.

However, the instant case is based upon the One Thousand Dollar and the Seventeen Hundred Dollar transactions, which amounts were evidenced by checks signed by Rolbes and Miller payable to Foster and indorsed by him and for which he received the cash, he evidently being a willing recipient of the favors of these men. A day of reckoning finally came and then Foster claimed that Lee had agreed to back him to the extent of Twenty-Five Thousand Dollars. This statement if true, would afford Foster no excuse because it would have been improper for Lee so to do, and it does not help Foster, but it is said that Mr. Lee was of unquestioned integrity, of highest character, whose paramount business interests of recent years were centered in the Bank and The Home Builders which he had unselfishly promoted for the benefit and welfare of the organization at whose head he stood. No one who ever met Mr. Lee and knew him even in a casual way would give credence to the story that he had agreed to place one-fourth of the capital of this bank behind Foster whom he had known for only a few months, and on an unsecured note at that; the story is unthinkable.

It is true that Rolbes and Miller had authority to sign checks, but this authority extended only to checks issued in furtherance of the legitimate business of the bank and not in the furtherance of a concerted plan to abstract from its treasury the earnings of the members of this Brotherhood. Miller unfortunately signed some of these checks in blank; these transactions were certainly without authority from the direct-

ors.

After all the paramount issue in this cause and the principal claim of error is as above stated that the verdict is against the weight of the evidence by the degree required by law in such cases.

An examination of the record discloses not only a well founded suspicion of a concerted plan to abstract the funds of this bank and on the part of DuBois and Rolbes at least, but their line of conduct and action clearly indicates to the unprejudiced mind that such was the purpose because these men at least two of whom well knew the requirements of the bank as to promissory notes, went forward abstracting its funds upon their unsecured obligations and permitting Miller to share the same until his indebtedness amounted to thousands of dollars, and so far as shown without a dollar's worth of property upon which to predicate such an obligation the whole unfortunate affair indicates that Foster was much in evidence about the bank, even attending a meeting with Rolbes, DuBois and Rueser in the summer of 1929, and that he aided and abetted DuBois in despoiling the funds of the bank, there is no doubt because he admits that he received some $17,000. The jury was clearly and manifestly right in the conclusion it reached.

There has been some suggestion that §12474 GC may not permit an indictment in the form disclosed in the instant case. However, it is sufficient to say that the indictment comes well within the provisions of the above statute and in the furtherance of justice this judgment should be affirmed and it is so ordered.

Judgment affirmed.

MAUCK, PJ, and MIDDLETON, J, concur.